## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AARON ROMERO,

       *Plaintiff,*

v.                                    CV 14-640 MV/WPL

UNITED STATES OF AMERICA,
JOHN R. CASTLEBERRY, Special Agent –
Drug Enforcement Administration, in his individual capacity,
PATRICIA G. WHELAN a.k.a. PATRICIA YAZZIE a.k.a. TRISH YAZZIE,
Special Agent – Drug Enforcement Administration, in her individual capacity,
MATTHEW B. MAYFIELD, Group Supervisor (GS) –
Drug Enforcement Administration, in his individual capacity,
RAYMOND "KEITH" BROWN, Assistant Special Agent in Charge (ASAC) –
Drug Enforcement Administration, in his individual capacity, and
JOSEPH M. ARABIT, Special Agent in Charge (SAC) –
Drug Enforcement Administration, in his individual capacity,

       *Defendants.*

## ORDER GRANTING MOTION TO FILE EXHIBITS UNDER SEAL AND ENTERING A PROTECTIVE ORDER

This matter is before me on Defendants Arabit and Brown's Motion to File Under Seal and for Entry of a Protective Order, itself filed *ex parte*. (Doc. 81.) Romero responded (Doc. 85), the United States filed a brief in support of the motion (Doc. 104), Arabit and Brown replied (Doc. 105), and Romero filed a surreply after obtaining leave of the Court (Doc. 109). Arabit and Brown request an order allowing them to file certain exhibits (Doc. 81 Ex. A-D) under seal as exhibits to their Motion to Dismiss (Doc. 80) and a protective order limiting the use of the exhibits and "other sensitive law enforcement records that may be produced during the course of this case . . . ." (Doc. 81 at 2.) In support of their motion, Arabit and Brown argue that the Drug Enforcement Administration's ("DEA") Agent Manual ("the Manual"), the major document at

issue, is protected from public disclosure by an exemption from the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7)(E). Exhibits A-D are excerpts from the Manual. Romero argues that a protective order is inappropriate because the information is publicly available or subject to disclosure under FOIA, and a protective order would violate his and his counsel's First Amendment rights. In the alternative, Romero states that if I determine that a protective order is appropriate, I should order the Defendants to turn over a complete copy of the 2011-2012 Manual and subject only the Manual to the protective order.

The background of this case has been extensively discussed in the pleadings, so I do not recount it here. For the reasons explained below, I grant Arabit and Brown's motion to attach, under seal, Exhibits A-D to their motion to dismiss. (Doc. 80.) I also grant the motion for a protective order, as outlined herein. Finally, because there are motions to dismiss based on qualified immunity pending before Judge Vazquez (Docs. 47, 49, 80) that would protect the Defendants from the burdens of discovery if granted, and because discovery is stayed, I deny Romero's request to order the Defendants to immediately produce a complete copy of the Manual.

"It is clearly established that court documents are covered by a common law right of access[, . . .] but [they] may be sealed if the right to access is outweighed by the interests favoring nondisclosure." *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599, 602 (1978)). The decision to enter a protective order is within the discretion of the trial court and may be entered for "good cause." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); FED. R. CIV. P. 26(c)). The "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise."

*Rohrbough*, 549 F.3d at 1321 (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999)).

There are, broadly, three kinds of protective orders: 1) particular protective orders; 2) umbrella protective orders; and 3) blanket protective orders. *Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 385 (D. Colo. 2000) (citing *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)). Particular protective orders "cover[] specific, identified information[,]" are "usually sought by a party prior to disclosing the information for which protection is sought[,]" and "require[ courts to] review specific, identified information to determine whether good cause exists to enter [a protective order.]" *Id.* When the case involves more than a few documents, particular protective orders often prove inefficient. *Id.* at 385-86 (citing *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 256 (D. Del. 1992)). Umbrella protective orders "designate[] all discovery as protected without any prior review whatsoever, by either a court or the parties." *Id.* at 386. Umbrella protective orders are generally disfavored by courts. *Id.* (citing *Bayer AG*, 162 F.R.D. at 465.) Blanket protective orders fall somewhere between the two extremes. These orders "place upon the parties themselves, or others from whom discovery is sought, the initial burden of determining what information is entitled to protection" and "requires that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection." *Id.* Designated information is then covered by the protective order unless objected to by an opposing party, at which point the court reviews the confidential designation. *Id.* Blanket protective orders "serve the interests of a just, speedy, and less expensive determination of complex disputes" by limiting the need for judicial intervention. *Id.*

Although Arabit and Brown state that they seek a particular protective order that would later morph into a blanket protective order, their request falls within the ambit of a blanket protective order. A stipulated blanket protective order requires that 1) the moving party makes a generalized showing of good cause to believe that discovery will include confidential or protected information; 2) the parties agree to use the confidential designation only in good faith; 3) the opposing party retains the right to challenge the designation; and 4) the party asserting confidentiality retains the burden of proving confidentiality if the designation is challenged. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Grp., Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988). When, as here, the parties do not stipulate to such an order, the court can nevertheless enter a blanket protective order so long as the moving party makes the requisite showing of good cause. *Id.*

To make the requisite generalized showing of good cause, Arabit and Brown point out that FOIA contains an exemption such that "records or information compiled for law enforcement purposes . . . [that] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law" are not subject to disclosure to members of the public. 5 U.S.C. § 552(b)(7)(E). Arabit and Brown argue that the Manual contains techniques, procedures, and guidelines for investigations and prosecutions and that disclosing the Manual's contents would allow drug traffickers to learn more about the inner-workings of the DEA and thus adjust their habits to avoid detection. One step worse, Arabit and Brown argue that this information would allow drug traffickers to figure out the practices of undercover officers and confidential sources and endanger those individuals.

Romero cites to Third Circuit cases for the proposition that "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." (Doc. 85 at 3 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).)

As noted above, the "good cause" determination in the Tenth Circuit flows from Rule 26(c)'s standard, which is "highly flexible." *Rohrbough*, 549 F.3d 1321. Other courts have found good cause to enter a protective order based on a "threshold showing . . . to believe that discovery will involve confidential or protected information." *E.g.*, *Cawley v. Signator Investors, Inc.*, No. 03-2176-CM, 2003 WL 22843185, at *1 (D. Kan. Nov. 25, 2003) (unpublished). Additionally, courts have found that applicable FOIA exemptions satisfy the threshold showing for good cause. *See Bell v. City of Chicago*, No. 09 C 0754, 2010 WL 753297, at *1 (N.D. Ill. Feb. 26, 2010) (unpublished); *Dine Citizens Against Ruining Our Env't v. Klein*, No. 07-cv-01475-JLK, 2009 WL 2407653, at *2 (D. Colo. Aug. 3, 2009) (unpublished).

In determining whether § 552(b)(7)(E) applies, courts have engaged in a two-step analysis. First, the court must determine whether the "[records or information] were created for a law enforcement purpose." *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 28 (D.D.C. 2012). Second, the court must determine whether production of the records or information "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In *Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007), the court concluded that 7(E) exemption also applied when the releasing the records or information would provide insight into a law enforcement agency's investigatory or procedural techniques and methods. *Id.* at 1129.

In determining whether the FOIA exemption applies to the Manual, I find that the Manual is for law enforcement purposes and therefore satisfies the § 552(b)(7)(E) threshold. *See*

*Miller*, 872 F. Supp. 2d at 28-29. The Manual contains "guidelines and procedures for the selection, direction and control of [confidential sources] and other sources of information." (Doc. 104 Ex. 1 at 2.) Disclosure of this information may disclose "techniques and procedures for law enforcement investigation." *Miller*, 872 F. Supp. 2d at 29; (*see also* Doc. 104 at 5-7 (explaining that the use of confidential sources is "extremely important to the DEA's mission" and arguing that disclosure of these procedures would impede law enforcement)). Accordingly, I find that the Manual was created for a law enforcement purpose and its disclosure may disclose techniques and procedures for law enforcement investigation, and the exemption in § 552(b)(7)(E) is therefore applicable.

I agree with Arabit and Brown, and with the United States, that the applicability of the FOIA exemption for law enforcement records and information under § 552(b)(7)(E) to the Manual meets the good cause requirement in *Parkway Gallery Furniture*.

The remaining three prongs under *Parkway Gallery Furniture*—that the parties will use the confidential designation only in good faith, that Romero will retain the ability to challenge the confidential designation, and that the party asserting confidentiality retains the burden of demonstrating the same if challenged—are addressed in the protective order below.

### PROTECTIVE ORDER

1. The Protective Order shall cover any documents, materials, and/or information produced or disclosed by any party that, if disclosed, may reasonably endanger law enforcement efforts or may be subject to the public disclosure exemptions in 5 U.S.C. § 552(b). This Protective Order shall govern documents, materials, and other information marked "SUBJECT TO PROTECTIVE ORDER" that are 1) produced or disclosed by any party during the course of the litigation or 2) filed with the Court. This includes, but is not limited to, copies, excerpts,

summaries, compilations, testimony, conversations, spreadsheets, databases, or presentations by parties or counsel to or before the Court.

2. The parties are responsible for designating confidential documents, information, or materials as "SUBJECT TO PROTECTIVE ORDER." The parties shall mark the documents, information, or materials in a manner that clearly indicates such designation and identifies which part or parts of the document or materials are deemed privileged or confidential. The parties may only use the confidential designation in good faith.

3. The designation of "SUBJECT TO PROTECTIVE ORDER" shall be made simultaneously with the disclosure of such documents, materials, and/or information. Any inadvertent failure to designate qualified documents, materials, and/or information shall be promptly corrected, in writing, upon discovery of the error.

4. At any point after receipt of documents, information, or materials marked "SUBJECT TO PROTECTIVE ORDER," the receiving party may challenge such designation by written motion to the Court. The documents, information, or materials shall be kept sealed until the Court rules on the motion challenging the designation.

5. All documents, materials, and/or information designated as subject to this Protective Order shall be used only by counsel for the parties and counsel's agents or employees, solely for the purposes of and during the course of this litigation. The documents, materials, and/or information shall be kept confidential in accordance with this Protective Order by all parties and their counsel, except as provided in Paragraph 6 below, and shall not be disclosed or made available to anyone except as specifically provided in this Protective Order, or by such further Order as the Court may enter.

6. The documents, materials, and/or information subject to this Protective Order may be disclosed without further Court approval only to the following: 1) the Court, as exhibits to motions or as hearing exhibits subject to the provisions of Paragraph 7 below; 2) the parties and their attorneys of record and counsel for the DEA and Department of Justice in this action, and their agents and employees; or 3) persons retained by, or at the request of, attorneys of record to assist in this case, including but not limited to attorneys, physicians, economists, and other consultants or experts. Any person provided with access to documents, materials, and/or information subject to this Protective Order shall be informed that it is confidential and subject to a non-disclosure Order of the Court. Nothing in this Protective Order shall be construed to prohibit use of documents by the DEA or the Department of Justice in its regular course of business.

7. With the exception of the Department of Justice, if any document, material, and/or information that is subject to this Protective Order is sought by a non-party person or entity for use in a civil or criminal proceeding that is not part of this litigation, such document, material, and/or information shall not be disclosed or made available except by Order of the Court, and only upon presentation to the Court of a Court Order compelling the disclosure of the document or information. For the purposes of this paragraph and this Protective Order, a subpoena shall not constitute a "Court Order"; only an order duly signed by a judge shall constitute a "Court Order." In response to any subpoena that seeks documents, materials, and/or information subject to this Protective Order, any party may produce a copy of this Protective Order to the person or entity that has subpoenaed the documents, materials, and/or information, or a Court, to explain non-compliance with the subpoena. This paragraph does not apply to the Department of Justice or its

agents. This paragraph shall not in any way limit the Department of Justice's or the DEA's ability to use in civil or criminal proceedings documents that are subject to this Protective Order.

8. The parties to this Protective Order may file under seal with the Court any portion of discovery materials containing documents, materials, and/or information designated as subject to this Protective Order, so as to exclude from the public record the information subject to the Protective Order.

9. Within twenty days after receipt of a hearing, trial, or deposition transcript, a party may designate in writing the specific pages of the transcript to be treated as subject to this Protective Order.

10. It shall be the responsibility of the attorneys of record in this action to employ, consistent with this Protective Order, reasonable measures to control duplication of, access to, and distribution of the documents, materials, and/or information subject to this Protective Order.

11. If any party is of the opinion that a document filed with the Court reveals information subject to this Protective Order, but was not designated as such by the filing party, that party may request of the filing party that they designate the information as subject to this Protective Order and request that the Court place the filing under seal.

12. If any party is of the opinion that documents, materials, and/or information produced during this litigation, but not filed with the Court, reveals information subject to this Protective Order but was not designated as such by the producing party, that party may request that the producing party designate the documents, materials, and/or information as subject to this Protective Order.

13. Except as provided herein, no person having access to documents, materials, and/or information designated as subject to this Protective Order shall disclose the documents,

9

materials, and/or information in any other litigation or shall make public disclosure of any of the documents, materials, and/or information without further Order of the Court.

14. All documents or materials and copies of documents or materials designated as subject to this Protective Order shall be destroyed or returned to counsel for the producing party within **ninety days** of the conclusion of all hearings, trials, and/or appellate proceedings in this case. If the documents are destroyed, counsel of record shall so notify counsel for the producing party in writing. This provision shall not apply to any documents, materials, and/or information for which the designation has been withdrawn or terminated, or to any documents, materials, and/or information that have been introduced at a hearing or in trial or that contain information that has otherwise become public.

15. Nothing contained in this Protective Order shall be construed as precluding the parties from introducing materials that are subject to this Protective Order, or the contents thereof, into evidence at hearing of this case.

16. Any specific part or parts of the restrictions imposed by this Protective Order may be terminated at any time by an Order of the Court on the motion of any party. This Protective Order is without prejudice to the rights of any party to make any objection to discovery permitted by the Court, or by any statute or other authority, or to the rights of any party to make evidentiary objections at hearing or trial.

### CONCLUSION

Romero's request that the Defendants be ordered to immediately produce a complete copy of the Manual is denied. Defendants Arabit and Brown may file Exhibits A-D under seal and as attachments to their Motion to Dismiss. (Doc. 80.) This Protective Order applies to any documents, materials, and/or information produced or disclosed by any party that, if disclosed,

may reasonably endanger law enforcement efforts or may be subject to the public disclosure exemptions in 5 U.S.C. § 552(b).

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.